**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TIMOTHY M. GLASS,**

      **Petitioner,**

           **v.**

**BRIAN COOK, WARDEN,**

      **Respondent.**

**Case No. 2:13-cv-00284
Judge Economus
Magistrate  Judge King**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  This matter is before the Court on the *Petition*, ECF 1, Respondent's *Return of*

*Writ,* ECF 5, Petitioner's *Traverse*, ECF 12, and the exhibits of the parties.  For the reasons that

follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be

**DENIED** and that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of

this case as follows:

> On September 12, 2008, a Franklin County Grand Jury indicted
> appellant on 12 counts of pandering sexually oriented matter
> involving a minor in violation of R.C. 2907.322 and six counts of
> illegal use of a minor in nudity oriented material or performance in
> violation of R.C. 2907.323. Appellant entered not guilty pleas to
> the charges and the matter proceeded. Between September 19 and
> October 17, 2008, appellant filed six pro se motions, seeking inter
> alia, discovery, dismissal, a continuance, a pretrial, and a bill of
> particulars. On October 21, 2008, appellant filed an affidavit of
> indigency and the trial court appointed public defender Norman
> Anderson to represent appellant. However, on December 9, 2009,
> the trial court granted Anderson's motion to withdraw as counsel
> and appointed Joe Scott to represent appellant. After a number of

continuances, a jury trial was scheduled to begin on January 25, 2010.

On December 16, 2009, appellant filed through counsel a motion to extend time to file motions and requests for discovery and a bill of particulars. On January 6, 2010, appellant filed through counsel a motion for a private investigator at state expense.

Prior to the commencement of trial on January 25, 2010, appellant's counsel filed at appellant's specific request, several motions, including a motion to have the charges against him dismissed due to a violation of his speedy trial rights, a motion to dismiss based on selective prosecution, a motion for relief from prejudicial joinder, a motion for an expert witness at government expense, and a witness list. Appellant also informed the trial court that he wanted to represent himself at trial and stated, "I wanted to represent myself during the entire time with Mr. Anderson." (Tr. 13–14.) The trial court told appellant that it did not think appellant was qualified to represent himself and that to do so would be a "dire mistake." (Tr. 15.) Appellant then requested to act as "co-counsel" with his appointed counsel. During their discussions, the following exchange occurred:

The court: Do you understand, Mr. Glass, if I were to do that, that you are bound by the same rules as a lawyer? And you are not— you just indicated to me a few minutes ago that you are not trained as a lawyer, but you understand that you'd be bound by the same rules as a lawyer as far as evidentiary matters, objections that may be made by the state. And I'm concerned that you don't have that background and knowledge to do that.

[Appellant]: I do not, your Honor.

The court: And you understand my concern?

[Appellant]: I do, you Honor.

The court: So you're asking to assume that responsibility, but you don't have the background?

[Appellant]: That is correct, your Honor.

(Tr. 26–27.)

It was also learned at this hearing that despite the fact appellant did not attend college, he graduated from high school and had "tried

2

cases before," though the record is lacking as to the type of cases and time-frame in which such cases were tried. (Tr. 27.) Appellant then reiterated his desire to act as "co-counsel" with his appointed counsel, and the trial court indicated that it would permit such an arrangement. The plea offers were read into the record, and appellant confirmed that his counsel conveyed the state's offers and that he "was not interested." (Tr. 30.) The trial court then denied the motions filed at appellant's request, with the exception of authorizing funds for a computer expert, and appellant's counsel conducted voir dire that afternoon and the following day.

However, on January 27, 2010, a Franklin County Grand Jury rendered a superseding indictment against appellant. Though appellant was re-indicted on the same 18 counts as set forth in his original indictment, the dates had been changed on certain counts. As a result, the trial court entered a nolle prosequi regarding the first indictment. Appellant indicated his willingness to proceed with arraignment on the new indictment and to waive both reading and service of the same. Appellant again entered pleas of not guilty, a bond was set, and the trial court again appointed Scott to represent appellant. Thereafter, a trial on the superseding indictment was scheduled for March 10, 2010.

Motions again were filed at appellant's express request including a motion to dismiss for lack of a speedy trial, a motion to sever the charges, a motion to suppress, and a motion for fees. These motions were argued by counsel on March 10, 2010, and denied from the bench. Additionally, the trial court reconsidered its decision to allow appellant to serve as "co-counsel" with his appointed counsel. The trial court told appellant that, pursuant to Ohio law, he could either represent himself or have appointed counsel. After hearing more warnings about self-representation, appellant again asked to represent himself. The trial court allowed appellant to represent himself, while his former counsel sat at counsel table and served as his "legal advisor."

The jury ultimately found appellant guilty of ten counts of pandering sexually oriented matter involving a minor and four counts of illegal use of a minor in a nudity oriented material or performance. The jury found appellant not guilty on the remaining four counts of the indictment. A pre-sentence investigation was ordered and the trial court sentenced appellant accordingly.

Appellant now appeals and assigns the following errors:

3

I. APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED UNDER OHIO LAW AS WELL AS THE OHIO AND FEDERAL CONSTITUTIONS WHEN NUMEROUS DELAYS OCCURRED PRIOR TO HIS TRIAL.

II. THE TRIAL COURT COMMITS PREJUDICIAL ERROR WHEN IT FAILS TO ADEQUATELY QUESTION AND INQUIRE OF APPELLANT AS TO WHETHER HE FULLY UNDERSTOOD AND INTELLIGENTLY RELINQUISHED HIS RIGHT TO COUNSEL.

III. OHIO STATUTES R.C. § 2907.322 AND R.C. § 2907.323 ARE UNCONSTITUTIONALLY OVERBROAD BECAUSE SAID STATUTES REGULATE MORE CONDUCT THAN THE OHIO GENERAL ASSEMBLY CAN LAWFULLY REGULATE THEREBY DENYING APPELLANT'S DUE PROCESS RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS. AS SUCH, APPELLANT'S PROSECUTION AND SENTENCE VIOLATES FEDERAL CONSTITUTIONAL LAW UNDER THE TENETS OF ASHCROFT v. FREE SPEECH COALITION, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002).

IV. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE PRE–TRIAL STAGES AND PRIOR TO HIS SELF–REPRESENTATION CONTRA HIS RIGHTS UNDER THE OHIO AND FEDERAL CONSTITUTIONS.

*State v. Glass*, No. 10AP-558, 2011 WL 6147023, at *1-2 (Ohio 10th App. Dist. Dec. 8, 2011).

On December 8, 2011, the appellate court affirmed the judgment of the trial court.  *Id*.  The

Ohio Supreme Court granted Petitioner's motion for a delayed appeal.  *State v. Glass*, 131 Ohio

St.3d 1497 (Ohio 2012).  On July 5, 2012, the Ohio Supreme Court dismissed Petitioner's

appeal. *State v. Glass,* 132 Ohio St.3d 1481 (Ohio 2012).[1]

On March 26, 2013, proceeding with the assistance of counsel, Petitioner filed this action

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He claims that the trial court violated

his rights under the Sixth and Fourteenth Amendments to the United States Constitution by

---

[1] Petitioner also pursued post conviction relief and a motion to vacate his sexual predatory classification. *See Exhibits 56-67 to Return of Writ*.  Neither of these actions is relevant to the issue Petitioner presents for relief.

failing to assure that he understood the dangers and disadvantages of representing himself at trial; therefore, he did not make a knowing, intelligent and voluntary waiver of his right to counsel.

Petitioner alleges that he did not knowingly and intelligently relinquish his right to representation by counsel because the trial court failed to inform him of the nature of the offenses charged, the statutory offenses included within those charges, the potential sentence that he faced, possible defenses to the charges, and potential mitigating circumstances.  The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant claims that the trial court failed to make a sufficient inquiry into his decision to waive his right to counsel and represent himself at trial.
>
> As recently reiterated by the Supreme Court of Ohio, a criminal defendant has a constitutional right to represent himself at trial. *State v. Johnson*, 112 Ohio St.3d 210, 858 N.E.2d 1144, 2006–Ohio–6404, ¶ 89, citing *Faretta v. Cal.* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. A defendant may proceed without counsel if the defendant has made a knowing, voluntary, and intelligent waiver of the right to counsel. *State v. Martin,* 103 Ohio St.3d 385, 816 N.E.2d 227, 2004–Ohio–5471, ¶ 24; *see also* Crim.R. 44(A) (defendant may forgo counsel after being fully advised, knowingly, intelligently, and voluntarily waives right to counsel).
>
> To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *Johnson* at ¶ 89, *quoting State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of the syllabus; *Martin* at ¶ 39. However, the United States Supreme Court has not prescribed a precise formula or script that must be read to a defendant who indicates that he desires to proceed without counsel. *Johnson* at ¶ 101. Instead, to be valid, a waiver of the right to counsel must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Martin* at ¶

40, quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309; *State v. Suber*, 154 Ohio App.3d 681, 798 N.E.2d 684, 2003–Ohio–5210, ¶ 15. A trial court must make a defendant aware "of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *State v. Montgomery*, 10th Dist. No. 02AP–927, 2003–Ohio–2888, ¶ 14, quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

On January 25, 2010, prior to trial on the initial indictment, appellant informed the trial court that he wanted to represent himself in this matter. Appellant told the trial court that he made his decision to represent himself "of my own free will ." (Tr. 105.) Additionally, the trial court repeatedly warned appellant of the dangers of self-representation. On appeal, appellant contends that because the trial court failed to advise him of the nature of the charges, possible penalties, and possible defenses to the charges before he made that decision, the waiver of counsel was not validly entered.

Indeed, the Supreme Court of Ohio concluded in *Martin* that the defendant did not effectively waive his right to counsel based in part because the trial court failed to explain the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses, mitigation or other facts essential to a broad understanding of the whole matter. *Id.* at ¶ 43, 816 N.E.2d 227, citing *Von Moltke*, 332 U.S. at 724, 68 S.Ct. at 323. However, two years later, the Supreme Court decided *Johnson*, a case in which the defendant faced the death penalty. In *Johnson,* the court concluded there was a valid waiver of the right to counsel where the defendant elected to represent himself for a portion of his trial. The court in *Johnson* distinguished *Martin i*n two ways: (1) the defendant in *Martin* conducted his whole defense by himself, whereas the defendant in *Johnson* had counsel until the close of the state's case; and (2) the warnings in *Martin* were inadequate due to the defendant's confusion about self-representation, whereas the defendant in *Johnson* "displayed no confusion about what he wanted or what self-representation meant." *Johnson* at ¶ 97. Notably, *Johnson* makes no mention of the trial court informing the defendant of the nature of the charges, lesser-included offenses, the range of allowable punishments, possible defenses or mitigation but, rather, *Johnson* focused on the defendant's knowledge of the charges and that he faced the death penalty, as well as the defendant's insistence on forgoing his right to counsel during trial.

6

Here, like the defendant in *Johnson*, despite being given repeated warnings about the dangers of self-representation, appellant displayed no confusion about wanting to proceed without counsel. In fact, appellant was unequivocal in his desire to represent himself and forgo his right to counsel and repeatedly requested that the trial court permit him to represent himself, beginning on January 25, 2010 and continuing until the start of trial on the superseding indictment on March 10, 2010. Prior to starting trial on March 10, the court again discussed with appellant his desire to represent himself and the court again expressed its opinion that appellant have Scott represent him:

The court: You're acting as your counsel. I have given you that opportunity. If you wish, I will give you a chance to confer with Mr. Scott during recesses, and during intervals, at recesses. Do you understand that?

[Appellant]: Yes, your Honor.

The court: But we are not going to go back and forth after every question or a situation should arise. We're not going to do that.

[Appellant]: Yes, your Honor. Thank you, your Honor.

The court: Okay. That is the reason, Mr. Glass, I have said it once and I have said it twice, I have said it more than three times, that is the reason I have—Mr. Glass, give me your attention.

[Appellant]: I'm sorry, your Honor.

The court: That is the reason I have suggested so strongly that Mr. Scott represent you. That is the reason I have—I can't say it any more explicit than that.

[Appellant]: Yes, your Honor.

The court: You don't just want that to happen; is that correct?

[Appellant]: Yes, your Honor.

The court: And you have made this decision?

[Appellant]: I have made this decision of my own free will, yes, your Honor.

(Tr. 104–05.)

In addition to being made aware of the dangers and disadvantages of self-representation, for a defendant's waiver of the right to counsel to be valid, the waiver must be made with an understanding of the nature of the charges, the range of allowable punishments, the possible defenses, any mitigating circumstances, and the dangers of self-representation. *Gibson* at 377, 345 N.E.2d 399. "However, the United States Supreme Court 'ha[s] not * * * prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election * * * will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.' " *Johnson* at ¶ 101, *quoting Iowa v. Tovar* (2004), 541 U.S. 77, 88, 124 S.Ct. 1379, 1387, 158 L.Ed.2d 209.

In the case before us, appellant was indicted on September 12, 2008, and immediately filed, *pro se*, a motion to dismiss, a request for discovery, and a request for bill for particulars. The substance of the motions demonstrates an appreciation and understanding of the legal process as it pertains to the matter herein. Shortly thereafter, Anderson was appointed to represent appellant and this representation lasted until December 9, 2009, at which time Anderson withdrew and the trial court appointed Scott to represent appellant. Trial on the charges contained in the initial indictment commenced on January 25, 2010, and Scott conducted *voir dire*. However, the matter was dismissed due to the re-indictment of the charges with amended dates. Thus, by the time appellant went to trial on the re-indictment, he had been represented by two different attorneys and had been represented until the completion of *voir dire* proceedings in the initial trial. *See Johnson* at ¶ 101, quoting *Maynard v. Meachum* (C.A.1, 1976), 545 F.2d 273, 279 ("it may be proper to presume that the defense counsel who represented [defendant] * * * had discussed all relevant aspects of the case with him").

The record also reflects appellant was extensively involved in his own defense as not only did appellant file a number of *pro se* motions, but, also, appellant explicitly requested that Scott file a number of pretrial motions, including a motion for expert witness at government expense, a motion to dismiss based on selective prosecution based on the allegation that not all of the participants in this matter had been charged, a motion to dismiss the indictment for alleged constitutional violations, and a motion to sever the charges. On January 25, 2010, prior to trial's commencement,

appellant argued his motion for selective prosecution, stating, in part:

And then you have me, who they are saying is showing these pictures to other people. And it just seems rather unfair that you have four people who have all committed the same offense or could fall into under the statute, two of which have admitted that they knew how old they were, and that they took the pictures. And the third person who admits that he did transfer the pictures; but yet, the prosecution has said we're not going to prosecute these other three people. We're only going to prosecute Mr. Glass.

(Tr. 36–37.)

Thus, not only the substance of his motions, but also his arguments to the court, demonstrate an understanding of the law upon which he was charged. Additionally, appellant understood he would be held to the same standard as that for all lawyers, he provided Scott with a witness list naming 35 persons, and appellant discussed discovery that he thought "would be helpful in [his] defense." (Tr. 102.) The record also reflects that Scott had "gone over the previous indictment" with appellant, and appellant admitted he understood the indictment such that he waived a reading of the same. (Tr. 61.)

We note the record itself is devoid of any discussion regarding the range of potential sentences. However, the record does indicate that two different plea offers were extended to appellant and put on the record, and, appellant confirmed he was "not interested" in them. (Tr. 30.) Accordingly, we believe it proper under these facts, and with no argument or evidence presented to the contrary, to presume that when discussing the plea offers, appellant's counsel discussed with him the range of allowable punishments. *Johnson* at ¶ 92, quoting *Maynard* (in a case where a defendant has been represented by counsel for a portion of the proceedings, " 'it may be proper to presume that the defense counsel who represented [defendant] * * * had discussed all relevant aspects of the case with him' "). In our view, the above mentioned case-specific factors affirmatively demonstrate appellant's understanding of the concepts deemed important in *Martin, i.e.,* the nature of the charges, the offenses included within them, possible defenses, and the range of allowable punishments.

After reviewing the record in its entirety, including appellant's conduct throughout these proceedings, we conclude, as did the court in *Johnson*, that the inquiry of appellant was sufficient and

9

that the circumstances presented here did not demand additional examination by the trial court. *State v. Tierney*, 8th Dist. No. 78847, 2002–Ohio–2607 (more thorough examination not required where the record reflects the defendant made a knowing and intelligent choice to represent himself).

Finding that the record herein establishes that the trial court made a sufficient inquiry to determine that appellant knowingly, intelligently, and voluntarily waived his right to counsel, we overrule appellant's second assignment of error.

*State v. Glass,* 2011 WL 6147023, at *6-10. [2]

---

[2] The state appellate record includes the following dissenting opinion:

There is little doubt that appellant freely made the decision to represent himself despite a number of admonitions from the trial court. However, the issue here is whether the trial court made sufficient inquiry to determine if appellant fully understood and intelligently relinquished that right. The record reflects that the trial court failed to make any inquiry to assess appellant's level of knowledge and understanding prior to accepting his waiver of right to counsel.

A criminal defendant has a constitutional right to represent himself at trial. *State v. Johnson*, 112 Ohio St.3d 210, 858 N.E.2d 1144, 2006–Ohio–6404, ¶ 89. A defendant may proceed without counsel if the defendant has made a knowing, voluntary, and intelligent waiver of the right to counsel. *State v. Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, 2004–Ohio–5471, ¶ 24; see also Crim.R. 44(A) (defendant may forego counsel after, being fully advised, knowingly, intelligently, and voluntarily waives right to counsel).

To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *Johnson (quoting State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph two of the syllabus); *Martin* at ¶ 39. " 'To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Id.* at ¶ 40, 816 N.E.2d 227 (quoting *Von Moltke v. Gillies* (1948), 332 U.S. 708, 723, 68 S.Ct. 316, 324, 92 L.Ed. 309); *State v. Suber*, 154 Ohio App.3d 681, 798 N.E.2d 684, 2003–Ohio–5210, ¶ 15. A trial court must make a defendant aware of the "dangers and disadvantages of self-representation, so that the record will establish 'he knows what he is doing and his choice is made with eyes open.' " *State v. Montgomery*, 10th Dist. No. 02AP–927, 2003–Ohio–2888, ¶ 14 (quoting *Faretta v. Cal.* (1975), 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562).

Appellant told the trial court, after a lengthy hearing, that he made his decision to represent himself "of my own free will." (Tr. 105.) Although the trial court clearly and repeatedly warned appellant of the dangers of representing himself, the trial court made no inquiry of appellant's understanding of the nature of the charges, possible penalties, or potential defenses before appellant waived his right to counsel. The majority opinion, apparently conceding this omission, presumes that appellant had sufficient information to effectively waive his right to counsel. However, courts are to indulge in every reasonable presumption against waiver of a constitutional right, including the right to have the assistance of counsel in a criminal proceeding. *State v. Haines*, 10th Dist. No. 05AP–55, 2005–Ohio–5707, ¶ 24 (*citing Brewer v. Williams* (1977), 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424).

Here, appellant waived his right to counsel before his trial started. Therefore, he was not represented by counsel during any stage of the trial. Although appellant was previously represented by counsel during his initial trial, that representation lasted only through *voir dire*. Thus, this case is factually distinguishable from *Johnson*. Because *Johnson* was represented by counsel throughout much of his trial, the court presumed his knowledge of certain aspects of his case. *Id*. at ¶ 92–93, 858 N.E.2d 1144. In fact, to highlight this important factor, the *Johnson* court analyzed another case in which a court excused the trial court's failure to properly inquire about the defendant's understanding of the consequences of his decision to represent himself, in part because the defendant waived his right to counsel after having been represented by counsel for 12 days of trial. *Id.* at ¶ 93, 858 N.E.2d 1144 (citing *United States ex rel. Konigsberg v. Vincent* (C.A.2, 1975), 526 F.2d 131). Based on that experience, the court concluded that such inquiry would not be necessary because the defendant had "full knowledge of his right to counsel and of the importance of having counsel[.]" *Id.* (quoting *Konigsberg* ).

Despite the fact that appellant was not represented during any stage of his trial, the majority opinion presumes appellant's knowledge and understanding of the relevant aspects of his case based upon appellant's: (1) plea negotiations when he was still represented by counsel; (2) submission to trial counsel of a list of potential defense witnesses and instructions for counsel to file certain motions; (3) admission that he had discussed his previous indictment with counsel and that he understood the second indictment; and (4) his previous experience with the courts. Although these are legitimate factors that should be considered, I do not believe they are sufficient by themselves to satisfy the standard articulated in *Martin* and *Johnson*.

Although the record reflects that prior to the commencement of appellant's first trial, he and his trial counsel met and discussed a potential plea bargain offered by the state, trial counsel indicated only that he "conveyed" the offer to appellant and that appellant "was not interested." (Tr. 30.) There is no indication that appellant's trial counsel reviewed the nature of the charges, possible defenses, possible penalties, and the strengths and weaknesses of his case. *Montgomery* at ¶ 20. Appellant's admission that he understood the contents of the second indictment and that he was active in planning his defense does indicate that appellant had some understanding of the charges he faced. Nevertheless, we cannot presume that he had other information essential to a broad understanding of the whole matter, such as lesser included offenses and possible penalties. Lastly, although appellant may have "tried cases before," the record does not indicate the subject matter of those cases or how that experience would substitute for the court's failure to inquire about his understanding of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Martin* at ¶ 40; *State v. Smith*, 9th Dist. No. 23006, 2007–Ohio–51, ¶ 13 (rejecting state's claim that previous trial experience could substitute for trial court's failure to properly advise defendant); *State v. Mootispaw*, 4th Dist. No. 09CA33, 2010–Ohio–4772, ¶ 53–54 (same).

I recognize that the trial court went to great lengths to advise appellant of the folly of self-representation. Nevertheless, the record does not indicate that appellant made that decision with the information deemed essential in *Martin; see also State v. Cline*, 164 Ohio App.3d 228, 841 N.E.2d 846, 2005–Ohio–5779, ¶ 76 (concluding that although trial court properly warned defendant of the danger of self-representation, it failed to advise defendant of the facts deemed essential in *Martin* ). Because the trial court made no inquiry regarding appellant's understanding of this essential information, I cannot conclude that appellant waived his right to counsel "with his eyes open." *Faretta.* Therefore, I would sustain appellant's second assignment of error, reverse the trial court's decision, and remand the matter for a new trial. I would also find that sustaining appellant's second assignment of error renders moot appellant's third and fourth assignments of error. Because the majority has reached a different conclusion, I respectfully dissent.

(Klatt, J. )

The findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). The state's court's denial of a petitioner's claim precludes habeas corpus relief unless that decision unreasonably applied or contravened federal law, or the decision was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2). Federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* —— U.S. ——, ——, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter,* —— U.S. ——, ——, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) (Federal law "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.").

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or unreasonably either extends or refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Coley v. Bagley,* 706 F.3d 741, 748–49 (6th Cir. 2013). The burden of satisfying the standards set

forth in § 2254 rests with the petitioner.  *Cullen v. Pinholster*, ——U.S. ——, ——, 131 S.Ct. 1388, 1398  (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable . . ., [t]he state court's application must have been objectively unreasonable" and not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision.'" (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering whether a state court's determination is "unreasonable" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'") (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills,* 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Furthermore, a federal court evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1) must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Pinholster,* 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

Petitioner alleges that he did not learn until the Friday prior to trial that his trial had been scheduled to begin the following Monday.  He complains that the trial court denied him the option of proceeding as co-counsel to appointed counsel.  *Reply*, Doc. No. 12, PageID# 1400.  In alleging that the trial court failed to sufficiently advise him of the dangers of self-representation, Petitioner points to his closing argument, in which he told the jury that he had made a mistake in choosing to represent himself and hoped that the jury would not hold that decision against him.[3] PageID# 1403.  Petitioner contends that the state appellate court contravened federal law when it merely presumed that Petitioner's waiver of his right to counsel was based on facts that did not appear on the record.  PageID# 1410.  Petitioner argues that the facts of this case are distinguishable from those presented by the cases referred to by Respondent.

In *Faretta v. California*,[4] the United States Supreme Court held that the Sixth Amendment guarantee of the right to counsel necessarily encompasses the right to self-representation.  422 U.S. 806 (1975).  "This choice is at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel. The choice, therefore, is in part a waiver and thus must be made knowingly, intelligently, and voluntarily."  *Jones v. Jamrog,* 414 F.3d 585, 592 (6th Cir. 2005*)*.  The defendant need not have the skill and experience of a lawyer in order to exercise the right to self-representation, but he "should be made aware of the dangers and disadvantages of

---

[3] Petitioner stated, "I believe that representing myself in this case is another big mistake.  After the first day of trial, I realized it was a big mistake.  I hope you don't hold that against me.  I wasn't sure what I was getting into when I started this." *Trial Transcript,* Doc. No. 5-2, PageID# 1241.

[4] The defendant in *Faretta* advised the trial court long before trial that he wanted to represent himself.  *Id.* at 808.  He had prior trial experience, a high school education, and did not want to be represented by the public defender  *Id.* at 807.  The judge advised Faretta that he was making a mistake in choosing to represent himself, that he would receive "no special favor," *Id.* at 808, and that he would be held to the same rules as defense counsel.  *Id.* at 808 n.2.  Ultimately, the trial court denied Faretta's request to represent himself, concluding that the defendant had not knowingly and intelligently waived his right to counsel.  The United States Supreme Court reversed that decision. *Id.* at 806.

self-representation, so that the record will show 'he knows what he is doing and his choice is made with eyes open.'" *Faretta* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  It is the petitioner's burden to "prove that he did not competently and intelligently waive his right to the assistance of counsel.'" *Akins v. Easterling*, 648 F.3d 380, 394 (6th Cir. 2011)(quoting *Iowa v. Tovar*, 541 U.S. 77, 92 (2004).

The determination of the constitutionality of a waiver of the right to counsel when exercising the right to self-representation turns on the particular facts and circumstances of each case, including the background, experience and conduct of the accused, the education or sophistication of the defendant, the complex or easily grasped nature of the charges, and the stage of the proceeding involved.  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).  Factors to be considered include whether the defendant understands "'the nature of the charges against him, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof and all other facts essential to a broad understanding of the whole matter.'"  *Fowler v. Collins*, 253 F.3d 244, 249 (6th Cir. 2001)(quoting *Van Moltke v. Gilles*, 322 U.S. 708, 724 (1948)).  No prescribed formula or script need be read to a defendant who elects to proceed without counsel. *Iowa v. Tovar*, 541 U.S. at 88. The extent to which a court must make inquiry of the defendant will vary from case to case.  *Fowler,* 253 F.3d at 249.   However, "[t]he court's obligation to maintain the integrity of the Sixth Amendment remains constant."  *Id*.

*Faretta* requires that a reviewing court look at the entire record, not just at the colloquy between the trial court and the defendant prior to the waiver, in considering whether the defendant's waiver of his right to counsel was constitutionally effective.  *King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006).  Consideration of the issue may also include whether and for how

long the criminal defendant was working with an attorney prior to invoking his right to self-representation:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. . . . [E]ven without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

*Henderson v. Morgan*, 426 U.S. 637, 647 (1976). *See also King v. Bobby,* 433 F.3d at 492-93 (affirming defendant's waiver of his right to counsel based, in part, on the fact that "King had been working with an attorney up until the week before he agreed to the plea bargain and presumably he not only had personal knowledge of the benefits of working with an attorney, he also reaped many of those benefits.")  Dilatory conduct on the part of a defendant may also establish an effective waiver of the right to counsel.  *United States v. Ross*, 703 F.3d 856, 868 (6th Cir. 2012). Under such circumstances, the "Constitution does not require a court to engage in an extended discussion about the repercussion of the waiver."  *Id.* at 868 (citations omitted).

The record presently before this Court indicates that, after the first indictment was returned on September 12, 2008, Petitioner filed various motions on his own behalf, including requests for discovery, dismissal, a continuance, a pretrial and a bill of particulars.  *State v. Glass*, 2011 WL 6147023, at *1; *Exhibits 3, 4* to *Return of Writ.* On October 21, 2008 the trial court appointed a public defender, Norman Anderson, to represent Petitioner.  *See id.* The trial court also continued the trial date from November 26, 2008, to December 1, 2008.  *Exhibit 5* to *Return of Writ.*  Later, the trial court continued the trial date on a number of additional occasions: to February 17, 2009, to permit defense counsel additional time to prepare for trial; to March 31, 2009, because defense counsel needed additional time to prepare; to June 1, 2009, to permit

further investigation and plea negotiations and because new charges were pending;  to August

13, 2009, because "additional preparation time is needed;" to October 19, 2009, because

"additional investigation and negotiation is needed;" and to January 25, 2010 to permit defendant

"additional time to discuss offer."  *Id*.  On December 9, 2008, Attorney Anderson filed a motion

for leave to withdraw, apparently because Petitioner refused to cooperate or assist in trial

preparation:

> [The Prosecutor]: ...[T]he defendant has completely been unwilling
> to work with Mr. Anderson on this case, which is why he asked
> this court to withdraw and then Mr. Scott was appointed.  And I
> would like it to be very clear that it was his unwillingness to work
> with his attorney as to why Mr. Anderson needed continuances, to
> try to get him into his office to go over the evidence, and the
> defendant refused to show up to meet with him.  And he's also had
> a history of not working with Mr. Scott as well.
>
> So I would just like the court to note these continuances are not
> unreasonable when a defense attorney doesn't feel he is prepared
> to go forward with trial when his client is not able to work with
> him on anything. . . .

*Id.* at PageID# 715-16.  *See also id.* at PageID# 640 ("[The Court]: And it's my recollection that

Mr. Anderson essentially said that he had little or no contact . . . with Mr. Glass during this

period of time."). The trial court appointed Attorney Joe Scott as defense counsel.  *Exhibit 69* to

*Return of Writ*, PageID# 517.  *See also Trial Transcript*, Doc. No. 5-2, PageID# 724. The record

reflects that Petitioner also failed to cooperate with Attorney Scott:

> Mr. Scott: . . . I was appointed in December . . . . I attempted to
> contact Mr. Glass since that time.  I've written letters to him at the
> address that I had.  I left telephone messages repeatedly at the only
> telephone number that I had for him that I got from Mr. Anderson .
> . . .  I even sent a certified return receipt letter to that address to
> him that was never picked up.  . . .  I finally drove to Grove City on
> Friday,  . . . and taped an envelope with a letter to Mr. Glass
> indicating, once again, I have been trying to reach him and I have
> been unsuccessful.  The trial was set for Monday.  I needed to sit
> down with him and go over the case.  And an hour o[r] two later, I

did receive a call in my office that the office forwarded, conferenced me in with Mr. Glass.  And I indicated to him how important it was for us to sit down and go over his case.

*Id.* at PageID# 644-45.

Mr. Scott: When I spoke with him on Friday around noon, I made – told him I'd be available the remainder of the day Friday, anytime Saturday, anytime Sunday, to meet with him.  And that it was – I'd like to meet with him Friday.  We have a lot of work to do.  And he said he was unavailable. . . . He would be available Sunday evening.  So I can meet with you Sunday, but I can't meet Sunday at 10:00 o'clock at night.  I can meet at 10:00 o'clock in the morning.  He and I did meet Sunday morning for the first time.

The Court: What about Saturday?  Was that not available?

Mr. Scott: I was wide open Saturday.  He said he was unavailable Saturday.  I was in the office, told him if things changed to call me Saturday.  I was in the office all day Saturday.  And I did not hear from him.

*Id.* at PageID# 646-47.

When the case was called for trial on January 25, 2010, the trial court was advised that Petitioner wanted to represent himself.  *Id.* at PageID# 650.

On January 27, 2010, a new indictment was returned against Petitioner. *Exhibit 11* to *Return of Writ*.  *See also Trial Transcript*, PageID# 696.  Petitioner was advised that the 18 counts contained in the new indictment "are the same counts that are set forth in" the earlier indictment, although "the dates have been expanded."  *Id.* at PageID# 696-97.  Attorney Scott confirmed that Petitioner had received a copy of the new indictment and that, although he had not reviewed the new indictment with Petitioner specifically, "[w]e have gone over the previous indictment.  Based on that and based on the new dates, I think we both understand what it is without going over it."  *Id.* at PageID# 698. Petitioner waived a reading of the new indictment.

18

*Id.* at PageID# 669.  The trial court re-appointed Attorney Scott on Petitioner's behalf.  *Id.* at PageID# 700.  The trial court set a trial date of March 10, 2010.  *Id*. at PageID# 706.

On that date, prior to trial proceedings, the trial court summarized the charges against Petitioner and counsel for the State and counsel for Petitioner addressed outstanding motions. *Id*. at PageID# 707-23.  After those motions had been resolved, Petitioner again expressed his intention to represent himself. *Id.* at PageID# 726.  The trial court declined to permit "dual" representation.  *Id*. at PageID# 724.  As noted *supra*, the trial court had previously advised Petitioner that "these are 18 counts of very serious allegations."  *Id.* at PageID# 664. The trial judge expressed his opinion that Petitioner's decision to represent himself was not in his best interest.  *Id*. at PageID# 725.  The trial judge also urged Petitioner to listen to his attorney and expressed confidence in defense counsel's representation.  *Id.*  Petitioner requested the opportunity to discuss the issue with his counsel, *see* PageID# 724-25, and, after conferring with counsel, Petitioner reaffirmed his intention to represent himself.  *Id*. at PageID# 725-26.  *See also id*. at PageID# 732 ("[A]nd Mr. Scott has consulted with Mr. Glass on numerous occasions.") Petitioner also acknowledged that his counsel was of the opinion that Petitioner was making the wrong decision.  *Id.* PageID# 733.

The trial judge again warned Petitioner that he was not qualified and lacked the necessary legal education to represent himself.  *Id*. at PageID# 731.  *See also id*. at PageID# 652.[5]  Despite the trial judge's repeated warnings and expressions of misgiving, Petitioner reiterated his belief that "the case would be better for me if I were to try it for myself."  *Id.* at PageID# 732.[6]

The record in this case does not support Petitioner's claim that the state appellate court - when it rejected Petitioner's claim that he did not knowingly, intelligently or voluntarily waive

---

[5] Petitioner had a high school education.  *Trial Transcript*, PageID# 652.  According to Attorney Scott, Petitioner had also "tried cases before."  *Id*. at PageID# 664.
[6] Attorney Scott again represented Petitioner at sentencing.  *See id*. at PageID# 1358.

his right to counsel - unreasonably applied or contravened federal law, or based its decision on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254 (d). Rather, the record reflects that most of the numerous continuance of the trial date were granted at the behest of the defense for such articulated purposes as trial preparation and engaging in plea negotiations. It is reasonable to conclude, as did the state appellate court, that either or both defense attorneys appointed for Petitioner must have discussed with Petitioner the nature of the charges, the potential sentence that he faced and defenses to the crimes charged. The fact that various pre-trial motions were filed either by Petitioner or at his express request[7] further suggests that he had some knowledge of the trial process, as does his representation to the trial court that he had previous trial experience. Petitioner was represented by counsel through *voir dire;* Petitioner therefore had the opportunity to observe at least a portion of the trial proceedings while represented by counsel. Nothing in the record indicates that Petitioner lacked the sophistication or education necessary to permit him to knowingly and intelligently waive his right to counsel. To the contrary, Petitioner acknowledged that he understood, and had rejected, two plea offers extended by the prosecution and insisted that he wished to proceed to trial. *Trial Transcript,* PageID# 667. *See also id.* at PageID# 713 (". . .[W]e have had offers – he has been unwilling to negotiate and plead to anything, and that has been since day one."). It is also significant that, during his cross-examination of a prosecution witness, Petitioner suggested that he understood the sentence that he faced. *Id.* at PageID# 1056-57.[8]

---

[7] Attorney Scott filed, at Petitioner's direction, requests to sever the counts, to dismiss on speedy trial grounds, to dismiss on the basis of selective prosecution, for relief from joinder and for the appointment of an expert witness at government expense. Petitioner also provided Attorney Scott the names and addresses of at least twenty defense witnesses. *Trial Transcript*, PageID# 647-648.

[8] "[Defendant]: Do you know that I will get eight --.
[Prosecutor]: Objection.
The Court: Sustained. May I see you a moment, please?"

Petitioner complains that the state appellate court improperly presumed a waiver of his constitutional right to counsel and "cobble[d] together" facts to support its decision. He argues that such "reverse-engineering" contravenes *Faretta* and *Von Moltke*.  *Reply,* Doc. No. 12, PageID# 1407-10.  This Court disagrees.

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case[.]" *Johnson v. Zerbst*, 304 U.S. at 464.

> While the *Zerbst* test for the waiver of a constitutional right has wide currency, different procedural requirements have been applied to ensure that a waiver is knowing and intelligent in different constitutional settings. *Compare Miranda v. Arizona,* 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that detailed warning requirements are generally required before individuals may waive their Fifth Amendment right not to incriminate themselves), *and United States v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (explaining the necessity of detailed warning requirements prior to the acceptance of a plea bargain), *with Ohio v. Robinette*, 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (rejecting the necessity of *Miranda*-style warnings for waiver of Fourth Amendment rights).

> In fact, the Supreme Court has not elaborated on the procedural requirements, if any, that a trial court must implement when applying the *Zerbst* standard in a self-representation setting like this one.

*Swiger v. Brown*, 86 Fed.Appx. 877, 880, unpublished, 2004 WL 187557, at *3 (6th Cir. Jan. 27, 2004).  Petitioner correctly notes that *Swiger* does not present the same facts presented by this case.[9]  Nevertheless, the Sixth Circuit's reasoning in *Swiger* is instructive in connection with this Court's application of *Faretta:*

> [O]ther federal courts of appeal have concluded that *Faretta* does not clearly establish that formal warnings by the trial court are

---

[9] Swiger agreed only to the appointment of private counsel and did not wish to exercise his right to self-representation.  *Swiger,* 2004 WL 187557, at *5-6.  "The problem was that a defendant cannot be permitted to stop the criminal justice process in its tracks by rejecting appointed counsel and refusing self-representation[.]"

required to establish a knowing, voluntary and intelligent waiver of the right to counsel. *See, e.g., Dallio v. Spitzer*, 343 F.3d 553, 564 (2d Cir.2003) ("[N]either *Faretta*'s holding nor its *dictum* clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right to counsel. . . ."); *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir.2002) (construing *Faretta* in a federal habeas case to mean "that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se*" but determining that "failure to do so . . . is not an error as a matter of law."); *Ferguson v. Bruton*, 217 F.3d 983, 985 (8th Cir.2000) (construing *Faretta* in a federal habeas case to mean that "a specific warning on the record of the dangers and disadvantages of self-representation is not an absolute necessity in every case if the record shows that the defendant had this required knowledge from other sources") (quoting *Meyer v. Sargent,* 854 F.2d 1110, 1114 (8th Cir.1988)).

*Id.* at 881.    The United States Court of Appeals for the Second Circuit has also considered

*Faretta*'s mandate:

The only Supreme Court support [for the proposition that federal law dictates a minimum constitutional prerequisite to a knowing and intelligent waiver of counsel] is language in *Faretta v. California* that a defendant waiving his right to counsel "should be made aware of the dangers and disadvantages of self-representation." 422 U.S. at 835, 95 S.Ct. 2525. Significantly, this quotation is not part of the holding in *Faretta*, but dictum in the case. The Sixth Amendment violation . . . specifically identified by the Supreme Court in *Faretta* derived from the state's refusal to allow the defendant to waive his right to counsel, not from any defect in his particular waiver. While "general expressions" of law by the Supreme Court that go beyond the actual decision in the case may well merit respect, *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–402, 5 L.Ed. 257 (1821) (rejecting arguments based on dicta in *Marbury v. Madison*), they do not constitute "clearly established law, as determined by the Supreme Court," for purposes of § 2254(d) review. As the Court itself instructed in *Williams v. Taylor*, "clearly established Federal law, as determined by the Supreme Court . . . refers to the holdings, as opposed to the *dicta,* of this Court's decisions as of the time of the relevant state-court decision." 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d

22

> 389 (2000) (internal quotation marks omitted); *accord Morris v. Reynolds*, 264 F.3d 38, 46 (2d Cir.2001).

*Dallio v. Spitzer*, 343 F.3d 553, 561-62 (6th Cir. 2003)(footnote omitted).

Further, Petitioner has no right to "engage in self-representation and at the same time assert his Sixth Amendment right to be represented by counsel.  There is no constitutional right to such hybrid representation."  *United States v. Greene*, No. 4:05-cr-15, 4:10-cv-15, 2013 WL 5488653, at *17 (E.D. Tenn. Sept 30, 2013)(citing *United States v. Cromer*, 389 F.3d 662, 681 n. 12 (6th Cir. 2004); *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir. 1987); *Jones v. Lewis,* 2010 WL 1257878, * 12 (E.D. Tenn. March 25, 2010)).

A fair reading of the record in this case establishes that Petitioner engaged in a purposeful effort to delay trial proceedings for his own benefit:  the record reflects numerous delays of the trial at the behest of the defense and there is evidence that Petitioner refused to meet with and to cooperate with both of the attorneys appointed to represent him.  Under the circumstances,  the Court is entirely unsympathetic to Petitioner's complaint that he did not learn of the trial date until shortly before trial.

"'[S]trategic delay weighs in favor of finding a waiver to be knowing and intelligent.'" *United States v. Ross*, 703 F.3d at 868 (quoting *United States v. Powell*, 353 Fed.Appx. 19, 22 (7th Cir. 2009).  "'[W]hen a defendant waives his right to counsel through his dilatory conduct, the Constitution does not require a court to engage in an extended discussion about the repercussion of the waiver.'"  *Id.* (quoting *King v. Bobby,* 433 F.3d at 493) (citing *United States v. Oreye,* 263 F.3d 669, 670 (7th Cir. 2001)).  Petitioner's deliberate conduct in this regard lends further support to the conclusion that Petitioner knowingly, intelligently and voluntarily exercised his right to self-representation.

Petitioner's statement, made in his closing argument, that he had underestimated the difficulty of representing himself at trial does not alter this conclusion.  The fact that Petitioner came to regret his decision will not serve to vitiate the fact that he knowingly and voluntarily waived his right to counsel and exercised his right to represent himself.

Petitioner's claim is without merit.

It is therefore **RECOMMENDED** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


 *s/ Norah McCann King*
Norah McCann King
August 7, 2014                                          United States Magistrate Judge